PEOPLE v SEVERANCE

1. Criminal Law—Evidence—Silence—Privilege—Harmless Error.

Admission of testimony for the prosecution that a defendant exercised his privilege of silence in the face of an accusation is reversible error unless it is shown that such admission is harmless error beyond a reasonable doubt.

2. Criminal Law—Evidence—Admissibility—Similar Acts.

Evidence of similar or like acts is admissible to show a scheme, plan, or system on defendant's part in doing the act for which he is on trial, even though it may show or tend to show the commission of another or prior or subsequent crime, but such testimony should first be taken in the absence of the jury and its admissibility determined at that point (MCLA 768.27).

Appeal from Muskegon, James F. Schoener, J. Submitted Division 3 June 12, 1972, at Grand Rapids. (Docket No. 12345.) Decided October 25, 1972. Leave to appeal denied, 389 Mich 758.

Phillip L. Severance was convicted of rape. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Paul M. Ladas,* Prosecuting Attorney, and *Fredric A. Grimm, Jr.,* Chief Assistant Prosecuting Attorney, for the people.

*Fredrick F. Balgooyen,* for defendant on appeal.

References for Points in Headnotes
[1] 29 Am Jur 2d, Evidence § 638 *et seq.*
[2] 29 Am Jur 2d, Evidence § 298 *et seq.*

Before: FITZGERALD, P. J., and HOLBROOK and T. M. BURNS, JJ.

HOLBROOK, J. Defendant Phillip Lawrence Severance was convicted by a jury of rape contrary to MCLA 750.520; MSA 28.788. He was sentenced to prison and is now appealing as of right.

Defendant raises five issues and we deem it necessary to consider only two of these, the others not being of substance.

## I

Was it reversible error to allow a police officer to testify that after defendant had been warned of his constitutional rights, he remained silent, despite the absence of objection thereto?

The now-objected-to testimony brought out by the prosecuting attorney on direct examination of police officer Swope is as follows:

"*Q. (by the prosecutor):* You indicated that you advised Mr. Severance of his rights. By that what do you mean?

"*A. (by police officer Swope):* Gave him the Miranda warning.

"*Q.* And what warnings did you give him?

"*A.* I read it from the card—you have a right to remain silent. If you choose to waive your right to remain silent anything you say, any answers you give will be used against you in court. You have a right to talk to an attorney or other person of your choice. If you want an attorney but can not afford one, an attorney will be appointed. If you give up your rights to remain silent and your right to an attorney, at any time during the questioning you decide you want an attorney, then we will stop until you have talked to one. If you give up your right to remain silent at any time you say that you don't want to answer anymore questions the questioning will stop. Do you understand

what I have just told you? And, he replied, 'Yes.'—'Do you want an attorney?', he replied: 'No.'—'Do you wish to waive, give up your right to remain silent?', he said, 'I will talk.'

"*Q.* Now, you stated that both you and your partner at the time you stopped this vehicle were acquainted with Mr. Severance?

"*A.* That is correct.

"*Q.* OK. You stopped him initially and gave him a ticket for no operator's license. Is that correct?

"*A.* That's correct.

"*Q.* What was Mr. Severance' demeanor at the time you made the initial stop, originally, to talk to him?

"*A.* He was quite jovial. We know him. We had several occasions to meet Mr. Severance on traffic stops. He had received quite a few tickets.

"*Q.* He was pretty jovial at this time?

"*A.* That's right.

"*Q.* When you advised him of his rights and started to talk about this particular case what was his attitude?

"*A.* He didn't say anything. I advised him of his rights and after that, then he says, 'What's this all about?'—and I told him what it was about and then he shut up and he didn't say anything."

The rule is now firmly established that the prosecution may not use at trial the fact that a defendant exercised his privilege of silence in face of accusation, for such would penalize the defendant for exercising the privilege. *People v Jablonski,* 38 Mich App 33 (1972). The people assert that inasmuch as defendant failed to object at trial he has not preserved the issue for appeal. This is generally true; however, such failure to object does not preclude review of an alleged violation of a constitutional right. *People v Cotton,* 38 Mich App 763 (1972).

In the case of *People v Graham,* 386 Mich 452, 458 (1971), it is stated:

"In our holding today, we stress that the defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial."

Admission of such testimony is reversible error unless we can say that it is harmless error under the ruling in *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), *reh den* 386 US 987; 87 S Ct 1283; 18 L Ed 2d 241 (1967).

In *People v Jablonski,* 38 Mich App 33, 38–39 (1972), our Court stated:

"The admission of such testimony obviously was error. The only question is whether or not it was harmless error. For the reasons set forth in *State v Stuart, supra* [456 SW2d 19 (Mo, 1970)], it would not appear that it could be said that it was harmless error. Also, since the prosecutor failed to file a brief in opposition, the inevitable conclusion is that he agrees that reversible error was committed. *People v Walma,* 26 Mich App 326 (1970). It would appear that the better rule is that there is absolutely no probative value in eliciting that the defendants were informed of their rights unless the prosecutor intends to offer a confession or statement made by the defendants. Since there is a potential prejudicial effect even from the mere mention of the rights statement, even in the absence of testimony that the defendant wished to exercise those rights, such statements should be excluded. Where there is an objection to such testimony, the trial court, in an attempt to alleviate the error, should immediately strike the testimony and instruct the jury that they should not consider it, and should then prohibit the prosecutor from making any further reference to the defendant's exercise of his right to remain silent.

"Continued expansion of the harmless error rule will merely encourage prosecutors to attempt to get such testimony in, since they know that, if they have a strong case, such testimony will not be considered to be reversible error, yet if they have a weak case, they will use such testimony to buttress the case to gain a

conviction and then hope that the issue is not raised on appeal."[1]

We are constrained to rule in this case that the people have failed to demonstrate that the error of permitting the police officer to testify that the defendant when questioned about the commission of the rape said, "He didn't say anything. I advised him of his rights, and after that, then he says, 'What's this all about?'—and I told him what it was about and then he shut up and he didn't say anything", was harmless error beyond a reasonable doubt. *Chapman v California, supra.*

## II

Did the trial court err in allowing the prosecutor to cross-examine the defendant about the details of prior charges which resulted in pleas to lesser offenses, under the theory that they were admissible to show a scheme, plan, or system on defendant's part in doing the alleged act for which he was on trial?

Testimony elicited from a defendant concerning prior arrests to test credibility is prohibited. *People v Brocato,* 17 Mich App 277 (1969).

MCLA 768.27: MSA 28.1050 does permit testimony to be introduced to show defendant's scheme, plan, or system in doing an act even though it may show or tend to show the commission of another or prior or subsequent crime. In order to be admissible under this statute, it must be a *similar* or *like act*. On retrial, such evidence if proffered should first be taken in the absence of the jury and only admitted if it meets the test as

---

[1] In the instant case, the people in their brief merely mention the issue raised, and fail to address any argument thereto.

set forth in *People v Kelly,* 386 Mich 330 (1971). Cross-examination of a defendant is permissible if the facts are sufficient to tend to show a common scheme, plan, or system on the part of the defendant within the latitude of cross-examination. *People v Kelly, supra.*

Reversed and remanded for further proceedings.

All concurred.