## PEOPLE *v.* BURRELL

1. BURGLARY—EVIDENCE—CIRCUMSTANTIAL—INNOCENCE—REBUTTAL.

   Evidence sufficiently negatived defendant's theory of innocence that he was merely passing by a plating company when its burglar alarm went off where a footprint similar to those made by defendant's boots was discovered inside company premises; footprints leading away from a broken window were identical to those made by defendant's boots; a vat of orange-colored liquid was below the broken window and on the floor around that vat and, this orange-colored liquid was not only present in the footprints in diminishing amounts as those footprints progressed away from the broken window but also was still wet on defendant's boots when he was taken into custody.

2. EVIDENCE—CRIMINAL LAW—EXHIBITS—EVIDENTIARY HEARING—CHAIN OF EVIDENCE.

   Admission of a screw found among defendant's personal possessions was not error where the trial court, before admitting that exhibit, held a thorough hearing to establish the chain of evidence between that exhibit and defendant.

3. EVIDENCE—CRIMINAL LAW—EXHIBITS—IDENTIFICATION—CHAIN OF EVIDENCE—ADMISSIBILITY.

   Police officers' testimony that they were present when defendant was searched, that a screw was found among defendant's possessions, that this screw was placed in a manila envelope by the turnkey who put the envelope in a numbered drawer corresponding to defendant's cell, that defendant identified his possessions

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 30 Am Jur 2d, Evidence § 1145.
[2-5] 29 Am Jur 2d, Evidence § 774.
[6-8] 21 Am Jur 2d, Criminal Law § 233.
[9] 53 Am Jur, Trial § 34.

including the screw and, that one officer removed this screw from the envelope containing defendant's possessions and marked it as evidence, sufficiently established the identification of this exhibit and its admission was not error.

4. EVIDENCE—CRIMINAL LAW—EXHIBITS—PROPER FOUNDATION—ADMISSIBILITY.

A proper foundation must be laid to justify the admission of evidentiary exhibits; and such exhibits must be identified as the articles they are purported to be, and shown to be connected with the crime or the accused, although such identification need not be positive.

5. EVIDENCE—CRIMINAL LAW—OBJECTIONS—SUFFICIENCY—ADMISSIBILITY.

Objections to the sufficiency of the identification of evidentiary exhibits goes to the weight rather than to the admissibility of those exhibits.

6. CRIMINAL LAW—TRANSCRIPT—INDIGENTS—EQUAL PROTECTION.

An indigent defendant is not necessarily entitled to the entire transcript of his previous trial, however convenient it may be for his counsel to have it for defendant's new trial, and a denial of an indigent's request for the full transcript does not deprive him of the equal protection of the laws where a reviewing court is not convinced that the majority of nonindigent defendants would indulge in such an extravagance.

7. CRIMINAL LAW—TRANSCRIPT—INDIGENTS—NEED.

An indigent defendant should ascertain what portion of his previous trial transcript he needs for his new trial and offer substantial reasons for that need, before a court is required to provide him with the requested transcript portion.

8. CRIMINAL LAW—PARTIAL TRANSCRIPT—INDIGENTS—DISCRETION.

Denial of indigent defendant's request for copies of prior trial testimony of police officers was not an abuse of discretion where defendant made his request while his new trial was in progress and the trial judge did not feel that the trial should be interrupted to obtain that partial transcript.

Appeal from Kent, Roman J. Snow, J. Submitted Division 3 November 6, 1969, at Grand Rapids.

(Docket No. 5,964.)    Decided February 4, 1970.
Leave to appeal denied July 23, 1970.  383 Mich 807.

George Washington Burrell was convicted by a
jury of breaking and entering with intent to commit
larceny.  Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James K. Miller,*
Prosecuting Attorney, and *Wesley J. Nykamp,* Chief
Appellate Attorney, for the people.

*Thomas VanHattum,* for defendant.

Before: FITZGERALD, P. J., and R. B. BURNS and
BRONSON, JJ.

R. B. BURNS, J.  Defendant appeals his conviction
by a jury of breaking and entering with intent to
commit larceny.  MCLA § 750.110 (Stat Ann 1969
Cum Supp § 28.305).

Two police officers, while on patrol, responded to
a burglar alarm from a plating company.  As they
pulled into the parking lot at the rear of the building
they saw defendant running away from the prem-
ises.  One of the officers chased the defendant and
apprehended him after ordering him to halt.  Other
police arrived at the scene, and it was observed that
a windowpane was missing along the east side of
the building and that a very distinct set of foot-
prints led from the window to the "well" area of
the loading dock and then to the corner of the build-
ing from which defendant was first observed by the
arresting officers.  In addition an orange-colored
liquid was observed around the imprints which
diminished in quantity as the footprints progressed
away from the window.  A snow imprint of defend-

ant's boot was made at the scene and was found to be identical to the footprints.

An inspection inside the building revealed that below the area of the missing pane was a tank filled with orange-colored liquid, and on the surrounding floor was a sawdust-like material saturated with the orange liquid. A footprint similar to those outside the window was observed in this material. Close at hand was found a 40-pound nickel anode which appeared to have been recently removed from a nearby plating tank. The bag in which it was contained was wet with plating solution and liquid was running on the catwalk where it was found. An investigating officer subsequently discovered a screw outside the broken window that was similar to one allegedly found among defendant's belongings.

The clothing and boots worn by defendant at the time of arrest were examined by an expert. A stain was found on the coat which was proved to have been caused by a nickel solution. Stains on the defendant's boots were found to be of a type of chromium associated with the plating industry.

The defendant testified on his own behalf. He stated that he was walking past the plating company when he heard the burglar alarm go off which excited him and caused him to run. He further testified that the boots he was wearing had been given to him by an employee of a plating company. He denied that he had any screws in his possession or that he had identified any screws as belonging to him. He denied that he had been in the building or involved in the break-in.

Defendant raises five questions on appeal, only three of which we shall consider.

1. Defendant claims the verdict of the jury was contrary to law and against the great weight of the evidence; that *People* v. *Spann* (1966), 3 Mich App

444, and *People* v. *Johnson* (1966), 4 Mich App 205, dictate a reversal because defendant's testimony presented a theory of innocence consistent with the circumstantial evidence which the prosecution failed to rebut.

*People* v. *Johnson, supra,* involved a defendant convicted of the crime of breaking and entering in the nighttime who appealed on the ground that there was not sufficient evidence as a matter of law to support the conviction. The Court therein said:

"The only criminating evidence adduced was the defendant's presence at the scene of the crime and his activities which the police regarded as suspicious. His explanation was that he lived next door to the gasoline station and no evidence was introduced to show he did not. His exculpatory statements, even if regarded as false, while they might show a consciousness of guilt are no substantive evidence of it."

The Court reversed because it could find "no evidence in the record which supports a conclusion that negatives every reasonable theory consistent with the defendant's innocence." Such is not the case here. The prosecution, through the testimony of the police officers, presented evidence that supported a conclusion negating defendant's theory of innocence, to wit: a footprint similar to those made by defendant's boots was discovered inside the plant; footprints leading away from the broken window were identical to those made by defendant's boots; below the window was a vat containing an orange-colored liquid and this liquid was also on the floor around the vat; the same colored liquid was present in the footprints in diminishing amounts as they progressed away from the window; and the orange color on defendant's boots was wet when he was taken into custody.

This evidence was sufficient to negate defendant's theory that he was merely passing by the plating company when the alarm went off.

2. Defendant claims the introduction of exhibits into evidence over the objection of the defendant constituted error.

This question involves the admission of a screw alleged to have been among defendant's personal possessions. Defendant challenged its admission on the basis that no one person or continuous series of persons had actually seen this screw taken from his person, marked as evidence and placed in a secure place.

The admission of the screw into evidence followed a thorough hearing by the trial court to establish the chain of evidence. Two officers testified that they had been present when the defendant was searched and that there had been a screw among his possessions which was put on the counter with the rest of his belongings and given to the turnkey. There was testimony by the officer who subsequently found a second similar screw, that he had been present when the defendant's possessions were placed in a manila envelope by the turnkey and put in the numbered drawer which corresponded to defendant's cell. A third officer testified that the defendant had been asked to identify his possessions and that when he (the officer) returned to the turnkey's office he was given the envelope which contained defendant's possessions, removed the screw and marked it. We find the proof sufficient to establish the identification of this evidence.

As stated in 22A CJS, Criminal Law, § 709, pp 949-951:

"To justify the admission, a proper foundation must be laid, and such articles must be identified as the articles they are purported to be, and shown to

be connected with the crime or with the accused; however, such identification is not required to be positive, absolute, certain, or wholly unqualified, and where there is some evidence for this purpose, objections to its sufficiency go to the weight rather than the admissibility of the articles in question."

3. Defendant claims the court's denial of the original transcript to him was a violation of the equal protection clauses of the constitutions of the United States and of the state of Michigan.

Defendant had been tried before and convicted by a jury for the same charge in a prior trial. The court granted a new trial without setting forth its reasons. Before the second trial which is the subject of this appeal defendant's counsel petitioned the trial court for a transcript of the original trial, with a supporting affidavit by counsel stating he felt it necessary that a transcript be provided in order for him to adequately and properly represent the indigent defendant. The petition was denied.

A similar motion was made during the trial for the transcript of testimony of two police officers, and was denied by the court.

This issue is one of first impression in Michigan. The Court of Criminal Appeals of Texas, in *Perbetsky* v. *Texas* (Tex Crim App, 1968), 429 SW2d 471, held that an indigent defendant was not entitled to a transcript of his previous trial. Illinois, in *People* v. *Wallace* (1966), 35 Ill 2d 620 (221 NE2d 655), and *People* v. *Delafosse* (1967), 36 Ill 2d 327 (223 NE2d 125), held that an indigent defendant was entitled to a transcript of the previous trials and that to deprive him of such transcript was a denial of the equal protection of the laws.

The second circuit of the United States Court of Appeals has decided this issue on two occasions. In *United States ex rel. Wilson* v. *McMann* (CA 2,

1969), 408 F2d 896, Judge Medina held that the denial of a partial transcript of the people's witnesses to an indigent defendant denied him the equal protection of the law and due process.

In *United States* v. *Carella* (CA 2, 1969), 411 F2d 729, the defendant had been furnished during the trial with a transcript of the direct testimony of one witness. After a mistrial counsel moved that he be furnished with the entire transcript of the trial. The motion was denied. The court stated on page 733:

"We are unwilling to say that a full transcript of a lengthy former trial, much of it relating to matters of no true concern to the indigent defendant, is invariably 'needed', however convenient it might be for counsel thus to be able to avoid having to think out what he truly requires. By no means every nonindigent defendant would indulge in such extravagance, although a truly rich one very likely would. * * * Erhart has pointed to no instance where a transcript of the previous trial could possibly have assisted him."

In our present case defendant's counsel filed a motion accompanied by an affidavit which stated that it was necessary that he have a copy of the entire transcript to adequately and properly represent the defendant. We agree it might be convenient for counsel to have the entire transcript of the first trial. However, we are not convinced that the majority of nonindigent defendants would indulge in such an extravagance. We think it should be incumbent upon the defendant to ascertain that portion of the transcript needed and to offer substantial reasons for the need.

During the course of the trial counsel renewed his motion and limited his request to copies of the testimony of the two police officers for impeachment

purposes. The trial judge denied the request as the trial was in progress and the judge did not feel that the trial should be interrupted to secure a transcript.

A trial judge must have certain discretion in conducting a trial and he did not abuse this discretion by refusing to interrupt the trial.

The other two issues raised by defendant have been considered but do not merit discussion.

Affirmed.

All concurred.