PEOPLE v BLONDIA

OPINION OF THE COURT

1. TRIAL—INSTRUCTIONS TO JURY—DISCUSSION AMONG JURORS—PREJUDICE.

A trial judge should instruct the jury not to discuss the case among themselves during the course of the trial, but omission of such an instruction is not reversible error absent prejudice or at least a showing of such conversations.

2. TRIAL—INSTRUCTIONS TO JURY—DISCUSSION AMONG JURORS.

An instruction to a jury that they may discuss the case they are hearing, although not with a view to the ultimate decision, is reversible error; it is assumed that having been so invited to discuss the testimony during the course of the trial, some jurors did so.

3. CRIMINAL LAW—EVIDENCE—SCIENTIFIC INSTRUMENTS—FOUNDATION—ACCURACY OF INSTRUMENTS.

The results of a scientific instrument used for measuring the speed of a motor vehicle may be admitted into evidence where the prosecutor has laid a proper foundation of proof of the accuracy of the instrument; a proper foundation was not laid where a police officer testified that he had calibrated a speed-measuring instrument over a premeasured half-mile course he thought was accurate, using a stop watch which was not a certified stop watch as prescribed by the instrument's manufacturer.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 6] 75 Am Jur 2d, Trial §§ 682, 974, 978.

[3, 5] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 326–328.

29 Am Jur 2d, Evidence §§ 823, 824.

Proof, by means of radar or photographic devices, of violation of speed regulations. 49 ALR2d 469.

[4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 115, 259, 260, 332–334.

29 Am Jur 2d, Evidence §§ 295, 370, 625, 830.

30 Am Jur 2d, Evidence § 1104.

Requiring submission to physical examination or test as violation of constitutional rights. 164 ALR 968, s. 25 ALR2d 1407.

4. CRIMINAL LAW—EVIDENCE—BLOOD TESTS—STATUTES—MANSLAUGH-
   TER.

   Admission into evidence of the results of a blood test made on a
   sample of blood withdrawn from a defendant, without the
   defendant having been informed of his right to have a doctor of
   his choice withdraw the blood or to administer another type of
   test for alcohol consumption, was not error where the defend-
   ant was charged with manslaughter; the statutes which afford
   a defendant those rights apply only to charges of driving under
   the influence of intoxicating liquor or driving while impaired
   and not to charges of other crimes (MCLA 257.625a[3],
   257.625a[6]; MSA 9.2325[1][3], 9.2325[1][6].

   DISSENT BY V. J. BRENNAN, J.

5. CRIMINAL LAW—EVIDENCE—SCIENTIFIC INSTRUMENTS—FOUNDATION
   —ACCURACY OF INSTRUMENTS.

   *Admission of testimony by a police officer concerning his use of a
   speed-measuring device, where no proper foundation is laid to
   demonstrate the device's accuracy, is reversible error.*

6. TRIAL—INSTRUCTIONS TO JURY—DISCUSSION AMONG JURORS—PREJ-
   UDICE.

   *Failure of a trial judge to remind the jury not to discuss the case
   does not require reversal absent a showing of prejudice.*

Appeal from Livingston, Paul R. Mahinske, J.
Submitted January 6, 1976, at Lansing. (Docket
No. 20905.) Decided June 24, 1976.

Phillip Blondia, Jr., was convicted of negligent
homicide. Defendant appeals. Reversed and re-
manded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Thomas J.
Kizer,* Prosecuting Attorney (Prosecuting Attor-
neys Appellate Service, *Edward R. Wilson,* Direc-
tor, by *Dennis M. Powers,* Special Assistant Attor-
ney General), for the people.

*Schurgin, Katkowsky & Rosenberg,* for defendant on appeal.

Before: DANHOF, P. J., and V. J. BRENNAN and M. J. KELLY, JJ.

M. J. KELLY, J. The defendant-appellant was charged with manslaughter, MCLA 750.321; MSA 28.553, and convicted of the lesser included offense of negligent homicide, MCLA 750.324; MSA 28.556. After sentencing to a term of 13 months to 24 months in prison, this appeal was filed of right.

The conviction arises out of an automobile accident which occurred on January 1, 1973. Defendant's car collided with a car driven by one Linda Garland, who was killed upon impact. The accident took place on Grand River Avenue, near the intersection of I-96 in Howell, Michigan.

Defendant raises three assignments of reversible error in this appeal; an improper instruction allowing the jury to discuss the case while the trial was ongoing, an improper admission of evidence regarding speed based upon a VASCAR unit and an improper admission of a blood sample into evidence.

We find that reversible error was committed when the trial judge instructed the jurors at the beginning of the trial:

*"The Court:* * * * The jurors can talk about the case, as I interpret the People versus Herd *[sic],* because they would have to ask questions. I always precaution the jury when they are being sent out for lunch or recess that they can discuss the case amongst themselves in the juryroom but never with an eye to what the ultimate of the case should be until they have been charged and sent back under directions to deliberate.

"You are to bear this in mind, and I will repeat: anytime you discuss the case back in the juryroom

amongst yourself, of course, you are not to discuss the case with one or two off in a vacuum somewhere. But if you discuss the testimony of a witness you have just heard on the witness stand back in the juryroom, that is fine. You can do that and it would be less than reasonable for me to ask you never to discuss anything until it is all over with because I know you are going to do it. We all know you are going to do it. But it is improper and you will be charged repeatedly, if you do discuss the testimony of the witness back in the juryroom it is not with the intent to decide on the basis of the testimony that you have heard up to that point on what the verdict should be.

"You are never in a position as a jury to actually deliberate relative to what the verdict should be in the case until the case is totally concluded.

"By that I mean that we have gone through the whole process I have just told you about, all of the witnesses testified, all of the arguments have been given, all of the legal charges have been given to you and you have been sent back with instructions to then deliberate relative to what your verdict should be.

"Bear in mind at anytime that you are discussing the case back in the juryroom it is not to be with an ultimate goal of what the outcome of the case should be. You are only in a position to do that when you are absolutely charged to go back to the juryroom to make that determination."

Similar instructions were issued throughout the trial. While it is clearly the law that the trial judge should instruct the jury not to discuss the case among themselves, the cases have held that the omission is not reversible error absent prejudice or at least a showing of such conversations. *People v Scott,* 55 Mich App 739; 223 NW2d 330 (1974), *People v Taylor,* 46 Mich App 259; 207 NW2d 899 (1973), *People v McIntosh,* 6 Mich App 62; 148 NW2d 220 (1967), *People v Haugabook,* 23 Mich App 356, 358–359; 178 NW2d 556 (1970).

We do not find Michigan precedent on point. We

do find such a novel instruction inappropriate. We
assume that having been invited to do so, some
jurors did discuss testimony during the course of
this 11-day trial. It may be that the rule prohibit-
ing discussions should be re-examined. If so, the
Supreme Court would be the proper forum.

We address the other issues in case they are
presented on retrial.

A State Police officer testified that he was travel-
ing 55 to 58 miles per hour when a speeding car
overtook and passed him in the left-hand lane. The
trooper's patrol car was equipped with a visual
average speed computer recorder unit (VASCAR)
which he activated as the car passed him. He was
allowed to testify, over defense objection, that his
VASCAR unit recorded the speed as 79.9 miles per
hour. It is alleged that that admission into evi-
dence was reversible error because there was no
competent testimony as to the accuracy of the
device.

The trooper testified that he calibrated the VAS-
CAR unit before each shift on a premeasured half-
mile course. He testified that he had not partici-
pated in the measuring of the course but that
other troopers had used it and had marked it and
he thought it was accurate. He also used a stop
watch to test the VASCAR unit but he did not
have anything to offer on the accuracy of the stop
watch except that it was not a certified stop watch
as prescribed in the manufacturer's instructions
on the use of the VASCAR unit.

In *People v Kenney,* 354 Mich 191, 196; 92
NW2d 335 (1958), the court allowed the results of
a scientific instrument used for measuring the
speed of a motor vehicle into evidence where:

"[I]t was shown by testimony that the instrument was

properly set up, was checked before using by the officers operating it, where it was shown that constant periodical checks were made by experts to determine whether or not the instrument was operating correctly, and where the officer operating the instrument observed the speeding vehicle and testified as to his estimation of the vehicle's speed * * * ."

Relying on the *Kenney* case, this Court, in the case of *People v Tobey,* 60 Mich App 420, 428; 231 NW2d 403 (1975), involving the admissibility of spectograph evidence, held that " * * * the prosecutor must lay a proper foundation of proof of the accuracy of the scientific and mechanical instruments used in the test". This seems to be the generally accepted rule regarding the admissibility of evidence of a scientific instrument in other jurisdictions. See 47 ALR3d 822, § 19, p 877; 21 ALR2d 1200 (Later Case Service), pp 447–449.

If the outcome of this appeal depended on the VASCAR speed evidence alone, we would hold that there was an insufficient showing of the accuracy of the unit because a proper foundation was not laid. Whether that error would mandate reversal is a question we need not reach because there seems to be considerable other independent testimony about the speed of the defendant vehicle which was properly admissible. We suggest that the VASCAR evidence be excluded on retrial if no better foundation is established then the one presented for our review here.

Defendant's final claim of error involves the withdrawing of a sample of his blood at the hospital, which was turned over to the State Police. Defendant was not informed of his right to have a doctor of his choice withdraw the blood or to administer any other type of test for alcohol consumption. Evidence was admitted concerning the

results of this blood test which tended to show that defendant was intoxicated at the time of the accident.

Defendant's argument is based on MCLA 257.625a(3); MSA 9.2325(1)(3), and MCLA 257.625a(6); MSA 9.2325(1)(6). Defendant reasons that since he was not informed of his right to have a person of his own choosing administer one of the tests, and that the results of such tests would be admissible and be considered with other competent evidence in determining his guilt or innocence, or of his right to demand that only a breath test be given, the blood sample was illegally taken from him and thus should have been inadmissible as evidence. We disagree.

In the recent case of *People v Moore,* 395 Mich 643, 644; 237 NW2d 464 (1976), the defendant contended that police officers should not have been allowed to testify as to evidence of intoxication where a Breathalyzer test had not been offered him. The Court stated:

"Appellant's final issue, one of first impression in this Court, asks the creation of an exclusionary rule, namely, a rule forbidding police officers to testify as to evidence of intoxication unless a Breathalyzer test is offered to a defendant suspected of having caused death in an automobile accident. The police in this case said they offered no Breathalyzer test because they had not observed defendant actually driving his car. In addition, there was testimony that defendant would have been allowed to take a Breathalyzer test if he had requested one. We perceive no cause for judicial creation of an exclusionary rule on this record and perceive no error in allowing into this record the evidence concerning intoxication."

Similarly, this Court held in the case of *People v Keen,* 56 Mich App 84, 86; 223 NW2d 700 (1974),

*lv granted,* 393 Mich 787 (1975), that the cited
statutes apply only to charges of driving while
under the influence of intoxicating liquor or driv-
ing while impaired and not to charges of other
crimes. We hold, therefore, that the statutes on
which defendant relies are inapplicable to the case
at bar and it was therefore not error for the trial
court to admit evidence of the blood test in this
case.

Reversed and remanded for a new trial for
failure of the trial court to give a proper requested
instruction to the jury not to discuss the case until
the proper time.

DANHOF, P. J., concurred.

V. J. BRENNAN, J. *(dissenting).* I concur in that
portion of Judge KELLY'S opinion dealing with the
admissibility of defendant's blood sample and the
improper admission of evidence regarding speed
based on the VASCAR unit.

I find reversible error in allowing Trooper Bluck
to testify concerning use of the unit, given that no
proper foundation was laid to demonstrate its
accuracy. *People v Tobey,* 60 Mich App 420, 428–
430; 231 NW2d 403 (1975). On the basis of this
evidence, which would tend to have great influence
on the jury, I am unable to say that they might
not have reached a different result had this evi-
dence been excluded.

On the other hand, I must disagree with my
Brother KELLY on the law concerning the trial
court's failure to caution the jury against discuss-
ing the case among themselves. Contrary to the
majority opinion, this Court has held that, al-
though prudence would dictate that the trial judge
should remind the jury not to discuss the case, his
failure to do so will not require reversal absent a

showing of prejudice. *People v Haugabook,* 23
Mich App 356, 358–359; 178 NW2d 556 (1970), *lv
den* 383 Mich 801 (1970), *People v McIntosh,* 6
Mich App 62, 70–71; 148 NW2d 220 (1967). I find
no evidence of prejudice on the record.